IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Iesha D. Jeter, | ) | |
| | ) | C/A No. 6:25-cv-06713-JDA-WSB |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| ADUSA Transportation LLC, | ) | |
| Dana Douglas, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 8. Plaintiff, proceeding *pro se*, brings this action against Defendants alleging employment discrimination under 42 U.S.C. § 1981. ECF No. 1-1. Pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), the undersigned United States Magistrate Judge is authorized to review all pretrial matters in employment discrimination cases and submit findings and recommendations to the district court.

## BACKGROUND[1]

Plaintiff is an African American female and resident of Greenville, South Carolina, who commenced employment with Defendant ADUSA Transportation, LLC[2] ("ADUSA") on February 20, 2020, as a part-time CDL driver until she was terminated on April 4, 2024. ECF No. 1-1 ¶¶ 2, 5. ADUSA is a commercial transportation company that conducts operations in Greenville, South Carolina. *Id.* ¶ 3. Defendant Dana Douglas ("Douglas") is also an African American female and

---

[1] The facts derive from the Complaint and are taken as true at this stage of the litigation. ECF No. 1-1 at 3-16.

[2] Plaintiff alleges that at the time she accepted her job with ADUSA, ADUSA was named C&S. ECF No. 1-1 ¶ 5.

1

resident of Greenville, South Carolina, who is employed by ADUSA as a Human Resources supervisor. *Id.* ¶¶ 4, 22.

In May 2022, Plaintiff recorded a video of multiple Caucasian ADUSA employees, including dispatchers, managers, and supervisors, making racially insensitive remarks about Bruce Wilson ("Wilson"), an African American coworker. ECF No. 1-1 ¶ 6. Plaintiff alleges that these remarks disparaged Wilson's involvement in the Black Lives Matter movement. *Id.* Plaintiff alleges that Michelle Yohanah ("Yohanah") and Shane Florian ("Florian") were both recorded making racially derogatory remarks in the video. *Id.* ¶¶ 29, 30.

Plaintiff alleges that she promptly notified Wilson of the discriminatory statements, after which Wilson filed a formal complaint with management. ECF No. 1-1 ¶ 6. Plaintiff also reported the incident and provided the video to management, after which managers Debra Rice and Bob Schultz then assigned Douglas to oversee Plaintiff's work. *Id.* ¶¶ 6, 19. During the complaint process, management allegedly disclosed to the employees featured in the video that Plaintiff was the individual who had recorded the footage. *Id.* ¶ 6. Plaintiff also alleges that she provided Douglas the video in confidence and that Douglas informed the subjects of the video that Plaintiff was responsible for recording it on May 25, 2022, despite Plaintiff's request for confidentiality. *Id.* ¶¶ 23, 37. Defendants' disclosure that Plaintiff had recorded the video directly resulted in severe retaliation against Plaintiff, and the individuals in the video began subjecting her to harassment and hostility, which fostered a hostile work environment. *Id.* ¶ 6. After providing a formal statement to ADUSA regarding the remarks made in the video, Transportation Manager Bobby Themes ("Themes") and his subordinates, including all dispatchers, engaged in a concerted effort to fabricate grounds for Plaintiff's termination and repeatedly attempted to provoke physical altercations with Plaintiff. *Id.* ¶ 7. Plaintiff alleges that she reported this harassment, but

management consistently dismissed her complaints. *Id.* Management not only failed to address the harassment but allegedly retaliated by issuing unwarranted disciplinary write-ups against Plaintiff and refusing to review exculpatory video evidence of the incidents. *Id.*

Sometime after Wilson had filed a formal complaint with ADUSA related to discriminatory practices, Plaintiff was listed as a witness and Defendants interviewed Plaintiff regarding Wilson's formal complaint. ECF No. 1-1 ¶ 9.[3] In August 2022, Wilson filed a lawsuit against ADUSA alleging discriminatory practices. *Id.* ¶ 10. Plaintiff alleges that she served as a witness for Wilson's lawsuit and provided testimony and evidence that corroborated Wilson's claims. *Id.* During the pendency of Wilson's lawsuit, Defendants engaged in retaliatory conduct against Plaintiff, but as Wilson's case progressed Defendants' retaliation and harassment "temporarily reduced" and "temporarily halted." *Id.* ¶¶ 10-11.

After Wilson's case concluded in April 2023, Defendants "reignited its campaign of retaliation with heightened intensity, subjecting Plaintiff to an intolerably hostile work environment." ECF No. 1-1 ¶ 11. Plaintiff alleges that this escalation was marked by targeted harassment, fabricated disciplinary actions, and overt hostility from supervisors. *Id.* This escalation "coerced" Plaintiff into joining the National Guard in July 2023 where she remained on military duty until January 2024 as a means escaping the discriminatory abuse. *Id.* Within days of returning in January 2024, Defendants abruptly revoked Plaintiff's longstanding work schedule accommodation, which was in place for over three years and allowed Plaintiff to take her son to school. *Id.* Plaintiff alleges that such revocation disrupted her ability to fulfill caregiving

---

[3] Plaintiff alleges this occurred "sometime in the early part of 2022". ECF No. 1-1 ¶ 9. The Court cannot know precisely when this is alleged to have occurred, but liberally construing the *pro se* pleading, it is assumed to have been after the May 2022 video incident.

responsibilities, signaling ADUSA's renewed intent to punish her for her prior protected activity. *Id.* Further, Plaintiff alleges that Douglas fabricated three disciplinary write-ups for alleged tardiness, "despite Plaintiff's adherence to her military-leave-adjusted schedule." *Id.* ¶ 37.

At some point after Plaintiff recorded the video and Defendants disclosed that Plaintiff was the individual who had recorded the video, Yohanah physically assaulted Plaintiff in the "Transportation Building" near the second-floor stairwell. ECF No. 1-1 ¶ 25. Plaintiff alleges that the assault was captured on video and demonstrated both racial animus and direct retaliation for Plaintiff exposing discriminatory behavior. *Id.* After the assault, management allegedly failed to take appropriate actions or conduct a proper investigation. *Id.* ¶ 26. Transportation Manager Audrey Harvard ("Harvard") not only refused to intervene but wrongfully accused Plaintiff regarding the incident while ignoring Yohanah's role as the aggressor. *Id.* Douglas then authorized Harvard to publicly escort Plaintiff off the premises in front of Caucasian coworkers, subjecting Plaintiff to humiliation and further retaliation. *Id.* Plaintiff also alleges that Florian retaliated against her by openly questioning Plaintiff's continued employment through asking other Caucasian coworkers, "[w]hy is she still here?" *Id.* ¶ 30.

On April 3, 2024, Plaintiff was dispatched to the Simpsonville Food Lion location. ECF No. 1-1 ¶ 15. Plaintiff alleges that she exited her vehicle to inspect a refrigerated trailer. *Id.* Plaintiff then approached the store entrance, where a female manager stood at the door and remarked, "I said good morning while you were by your truck, but you didn't say anything." *Id.* Plaintiff responded, "I didn't hear you, but good morning." *Id.* Once inside the store, Plaintiff and the manager proceeded to the rear of the trailer where four of the employees were gathered. *Id.* ¶ 16. Plaintiff alleges that she stepped aside to allow the employees to begin unloading, at which point the manager insisted that Plaintiff should be removing pallets. *Id.* Plaintiff informed a male

4

supervisor inside the trailer that company policy prohibited drivers from unloading merchandise. *Id.* The manager then grew visibly agitated, contacted Food Lion management, and filed a false complaint alleging misconduct by Plaintiff. *Id.* Despite this, Plaintiff alleges that she completed the full shift without incident. *Id.*

The following day, on April 4, 2024, Themes contacted Plaintiff and stated that "[y]ou're terminated because [Douglas] told me to call you." ECF No. 1-1 ¶ 17. When Plaintiff asked for clarification, Themes allegedly replied, "[h]onestly, I'm not sure. I think it's because we received a complaint." *Id.* Plaintiff alleges that no further explanation, written notice, or opportunity to contest the allegations was provided. *Id.* Plaintiff asserts that her termination was pretextual and based on Plaintiff's engagement in prior protected activities. *Id.* Plaintiff also asserts that Defendants cited false justifications for her termination, but, even if the justifications were true, company policies were inconsistently applied because Caucasian employees who engaged in more severe misconduct faced no disciplinary action. *Id.* ¶ 41. Plaintiff alleges that Douglas directed Themes to terminate Plaintiff and that roughly a month prior to Plaintiff's termination, in March 2024, Douglas stated to Plaintiff that "[y]ou should've never made that video it made all of us look bad." *Id.* ¶ 37.

Plaintiff generally alleges that she performed her duties above the standard level during her employment with ADUSA and that she both witnessed and experienced managers, supervisors, and dispatchers treat African American employees less favorably than Caucasian employees under similar circumstances. ECF No. 1-1 ¶ 5. Plaintiff generally alleges that a systemic, racial disparity existed in the enforcement of company policies because Caucasian coworkers who engaged in more severe misconduct than Plaintiff faced no comparable discipline. *Id.* ¶ 23. More specifically, Caucasian employees who engaged in egregious misconduct, including using racist language

toward African American coworkers, refusing work schedules, and violating company policies, were "routinely permitted to retain their positions without consequence." *Id.* ¶ 28. Plaintiff asserts that this pattern of leniency to Caucasian employees starkly contrasts Defendants' enforcement of its policies when Plaintiff was terminated. *Id.* ¶¶ 28, 36. Plaintiff also alleges that Douglas directed dispatchers to exclude Plaintiff from critical route assignments in 2023 while permitting Caucasian employees to refuse route assignments without penalty. *Id.* ¶ 37.

Plaintiff commenced this action by filing a Complaint in the Greenville County Court of Common Pleas against Defendants on May 16, 2025, asserting claims for race discrimination and retaliation under § 1981. ECF No. 1-1. On July 8, 2025, Defendants filed a Notice of Removal. ECF No. 1. Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on July 9, 2025. ECF No. 8. On July 10, 2025, in an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the summary judgment and motion to dismiss procedures and the possible consequences for failing to respond adequately. ECF No. 9. Plaintiff filed a Response on July 22, 2025. ECF No. 11. Defendants filed a Reply on July 29, 2025. ECF No. 12. This matter is ripe for review.

## APPLICABLE LAW AND ANALYSIS

### Rule 12(b)(6) Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Williams v. Preiss-Wal Pat III, LLC*, 17 F.Supp.3d 528, 531 (D.S.C. 2014) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Rule 8(a) sets forth a liberal pleading standard, which requires only a "short and plain statement of the claim showing the pleader is entitled to relief, in order to give the defendant fair notice of what ... the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotation

marks omitted). "In assessing the sufficiency of a complaint, [the court] assume[s] as true all its well-pleaded facts and draw[s] all reasonable inferences in favor of the plaintiff." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (citing *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 570). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## ANALYSIS

As an initial matter, in Plaintiff's Response, she cites to nonexistent legal authorities, misquotes existing case law, and cites to case law in support of propositions for which such cases do not support. *See, e.g.*, ECF No. 11 at 6, 9 (citing two cases that do not exist *Andrews v. Va. Union Univ.*, 2021 U.S. App. LEXIS 12460 (4th Cir. Apr. 27, 2021)[4] and *Grant v. Mayor of North Myrtle Beach,* 2020 WL 550069, at 5 (D.S.C. Feb. 4, 2020));[5] ECF No. 11 at 4 (misquoting *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017) as stating "Comcast did not alter the

---

[4] There is no case entitled *Andrews v. Va. Union Univ.* issued by the United States Court of Appeals for the Fourth Circuit. A case entitled *Andrews v. Va. Union Univ.* was issued by the United States District Court for the Eastern District of Virginia in 2008, which is correctly cited as 2008 U.S. Dist. LEXIS 40001. However, the *Andrews v. Va. Union Univ.* did not involve allegations of racial discrimination or a claim under § 1981. The citation given by Plaintiff, "2021 U.S. App. LEXIS 12460" is for a case entitled *Davis v. Saul*, 846 F. App'x. 549 (9th Cir. 2021). The *Davis* case is a Social Security matter, not race discrimination or a claim under § 1981.

[5] The Court could not locate a case entitled *Grant v. Mayor of North Myrtle Beach* or a case associated with a citation of 2020 WL 550069.

pleading standard for § 1981 claims" when *Comcast Corp. v. Nat'l Ass'n of Afr. American-Owned Media*, 589 U.S. 327 (2020) was not decided until 2020).

In Defendants' Reply, Defendants assert that Plaintiff may be using AI to research and draft her filings. ECF No. 12 at 1. Defendants argue that Plaintiff's Response lacks credibility because of Plaintiff's alleged use of AI and that the Court should disregard such Response. *Id.* at 9. Defendants also point to cases wherein parties, including pro se parties, have been subjected to sanctions for fabricating legal authority through the use of AI. *See id.*

The Court cautions Plaintiff to verify the accuracy of all citations and representations to this Court pursuant to her obligations under Federal Rule of Civil Procedure 11. Furthermore, the type of misquotation and reliance on case authority which does not exist is consistent with the use of generative AI to prepare briefs instead of actually reading the case law and rules. The Court informs Plaintiff that use of generative AI without proper verification may violate Rule 11. *See e.g., Mescall v. Renaissance at Antiquity*, C/A No. 3:23-CV-00332-RJC-SCR, 2023 WL 7490841, at *1 n.1 (W.D.N.C. Nov. 13, 2023) ("Use of artificial intelligence to write pleadings is a novel issue, and appears to be untread territory in the Fourth Circuit. However, recent caselaw from outside of this jurisdiction supports the common-sense conclusion that the use of artificial intelligence creates challenges, raises ethical issues, and may result in sanctions or penalties when used inappropriately.") (citing *Mata v. Avianca, Inc.*, C/A No. 22-cv-1461, 2023 WL 4114965, at *1 (S.D.N.Y. June 22, 2023) (finding "bad faith on the part of [legal counsel] based upon acts of conscious avoidance and false and misleading statements to the Court" and imposing sanctions when counsel "submitted non-existent judicial opinions with fake quotes and citations created by the artificial intelligence tool ChatGPT")). Citations to non-existent judicial opinions with fabricated quotes appear in Plaintiff's briefing. However, the Court finds that the novelty of AI

technology and Plaintiff's *pro se* status militate against a finding of bad faith at this stage. It is the Court's hope that Plaintiff's unfamiliarity with legal research and writing has led to unintended misstatements of the law by Plaintiff. Based upon this, at this time, the Court does not find sanctions necessary.

If Plaintiff is using generative AI to assist in writing submissions to the Court, given the limitations of this technology, she is instructed to exercise greater care and diligence in ensuring the accuracy of the citations and quotes by reading the actual cases, rules, and statutes. Plaintiff is warned that a continued failure to verify cases, citations, and quotes, will wrongfully multiply the proceedings and may serve as evidence of bad faith which can result in sanctions.

**Race Discrimination**

Plaintiff asserts a claim for race discrimination under § 1981 against Defendants. ECF No. 1-1 ¶¶ 38-46. Section 1981 provides in part that all "persons ... shall have the same right ... to make and enforce contracts ... as is enjoyed by [Caucasian] citizens." 42 U.S.C. § 1981(a). The Supreme Court of the United States has interpreted § 1981 "to forbid all racial discrimination in the making of private as well as public contracts." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987) (internal quotation marks omitted). This prohibition includes "discrimination in private employment on the basis of race." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975). Therefore, a person who experiences race discrimination in private employment may pursue a "federal remedy" under § 1981. *Id.*

"A plaintiff may ultimately prove a race-discrimination claim under § 1981 through direct or circumstantial evidence showing that an adverse employment action was caused by intentional discrimination aimed at the plaintiff's race, or through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Ali*

*v. BC Architects Eng'rs, PLC*, 832 F. App'x 167, 171 (4th Cir. 2020) (citing *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)) (internal quotations omitted). However, a § 1981 plaintiff need not plead facts demonstrating that she satisfies the *McDonnell Douglas* framework to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002). To state a § 1981 race-discrimination claim, a plaintiff merely must allege facts making it plausible that, but for race, she "would not have suffered the loss of a legally protected right" under the statute. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020). A "complaint can only survive a motion to dismiss where its factual allegations, not conclusions, raise a right of relief above the speculative level, thereby nudging the claim across the line from conceivable to plausible." *Barnhill v. Bondi*, 138 F.4th 123, 131 (4th Cir. 2025) (internal quotations omitted).

Defendants argue that Plaintiff's race discrimination claim fails because she does not plausibly plead that that her race was the but for cause of her termination. ECF No. 8-1 at 3-4. Plaintiff argues that the Complaint "alleges a systematic campaign of racial discrimination … that directly links Plaintiff's race … to her termination. ECF No. 11 at 5. Plaintiff also argues that she detailed how she witnessed and documented Caucasian managers and dispatchers treating African American employees, including herself, less favorably than Caucasian employees under similar circumstances. *Id.* Specifically, Plaintiff points to her allegations that video evidence exists of Caucasian employees making racially derogatory remarks and that management refused to address such conduct. *Id.* Plaintiff argues that this "highlights disparate treatment by comparing Plaintiff's termination for minor or unsubstantiated infractions to the lack of discipline for [Caucasian] employees who engaged in more egregious misconduct." *Id.* at 6.

Plaintiff does not allege facts making it plausible that but for her race, her employment would not have been terminated. *See Comcast*, 589 U.S. at 341. Rather, Plaintiff alleges that she was terminated based on recording the video and participating in Wilson's subsequent lawsuit against ADUSA. *See*, *e.g.*, ECF No. 1-1 ¶ 14 ("The sequence of events—resuming retaliation post-Wilson's case, forcing Plaintiff into military service, dismantling her accommodations, and fabricating grounds for termination—demonstrates a calculated effort to interfere with Plaintiff's employment rights in retaliation for opposing racial discrimination and supporting Wilson's claims."); *id.* ¶ 12 ("Plaintiff asserts that her termination was directly motivated by her participation in Wilson's legal action and her role in exposing discriminatory practices within the company."); *id.* ¶ 17 ("Plaintiff asserts [her] termination was pretextual and directly tied to Plaintiff's prior activities, including: [serving as a witness in Wilson's discrimination case against [ADUSA]…[d]ocumenting and reporting racially insensitive conduct by coworkers and supervisors…"). Plaintiff also alleges that Douglas, who allegedly directed Themes to terminate Plaintiff, stated to Plaintiff, "[y]ou should've never made that video it made us all look bad," approximately a month before Plaintiff's termination. *Id.* ¶ 37. These allegations do not support a reasonable inference that "but for" Plaintiff's race, she would not have been terminated. *Comcast Corp.*, 589 U.S. at 341; *see*, *e.g.*, *Gallman-Derienzo v. Webster Univ.*, C/A No. 2:23-cv-2468-RMG-KDW, 2024 WL 3666386, at *12 (D.S.C. June 5, 2024), *R&R adopted by* 2024 WL 3517811 (D.S.C. July 24, 2024) (finding that a plaintiff failed to plead but for causation based on racial discrimination when her complaint alleged that adverse employment actions were taken in retaliation for reporting race discrimination). Rather, these allegations support an inference that she was terminated in retaliation for her recording the video and supporting Wilson's claims,

notwithstanding her race. Thus, Plaintiff does not state a claim for race discrimination as to her employment termination.

In addition, to the extent Plaintiff argues that she plausibly alleges but for causation by alleging disparate treatment compared to Caucasian employees, such argument fails because her allegations relating to disparate treatment are conclusory and tied to retaliation. Plaintiff generally alleges that Caucasian managers, supervisors, and dispatchers treated African American employees less favorably than Caucasian employees. ECF No. 1-1 ¶ 5. Plaintiff alleges that she was treated differently than her Caucasian coworkers and that Caucasian employees who engaged in more severe misconduct than her faced no disciplinary action, thus "highlighting systemic racial disparities in enforcement." *Id.* ¶ 23. Plaintiff also alleges that Caucasian employees who engaged in egregious misconduct, including using racist language toward African American coworkers, refusing work schedules, and violating company policies, were routinely permitted to retain their positions without consequence. *Id.* ¶ 28. Plaintiff's argument is not persuasive in light of her allegations relating to Douglas terminating her in retaliation for engaging in protected activities rather than because of her race. *See, e.g.*, *Nadendla v. WakeMed*, 24 F.4th 299, 305-06 (4th Cir. 2022). In addition, Plaintiff does not provide factual details to support her allegations of "systemic racial disparities in enforcement" such as specific instances where the decisionmaker, Douglas, enforced the same company policies differently for Caucasian and African American subordinates. *Id.* For example, Plaintiff alleges that Douglas issued disciplinary write-ups against her for tardiness but does not allege that Douglas failed to issue similar write-ups for Caucasian employees. ECF No. 1-1 ¶ 37. Plaintiff alleges that Douglas did not penalize Caucasian employees for refusing route assignments but does not allege that she was disciplined for refusing route assignments. *Id.* In addition, as to Plaintiff's allegations regarding miscellaneous disparate

treatment, such disparate treatment is similarly alleged to be the result of retaliation rather than race discrimination. *See id.* ¶ 11, 22, 37.

Based on the foregoing, the undersigned recommends that the district court grant Defendants' Motion to Dismiss as to Plaintiff's race discrimination claim under § 1981, without prejudice.

**Retaliation**

Defendants argue that Plaintiff fails to plead facts supporting a claim for retaliation because there is no causal connection between any protected activity and her employment termination, as evidenced by the two-year time-gap between Plaintiff's involvement in Wilson's discrimination complaint and her termination. ECF No. 8-1 at 6. In addition, Defendants note that Plaintiff's termination was prompted by a third-party manager's complaint of her misconduct during a dispatch. *Id.*

To establish a claim of retaliation under § 1981[6], a plaintiff must show (1) that she engaged in protected activity, (2) that the employer took a materially adverse action against her, and (3) there is a causal connection between the protected activity and the adverse action. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019). To establish a causal nexus between protected activity and an adverse action, a plaintiff can either show "a temporal proximity" between the events or that "other relevant evidence indicates 'continuing retaliatory conduct and animus'" toward the plaintiff. *Alberti v. Rector and Visitors of the U. of Va.*, 65 F.4th 151, 156 (4th Cir. 2023) (quoting *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007)); *see Barnhill*, 138 F.4th at 132-33 ("[E]ven in the absence of temporal proximity, causation can be established through a

---

[6] "A prima facie retaliation claim under 42 U.S.C. § 1981 has the same elements [as a Title VII claim]." *McKinney v. G4S Gov't Sols., Inc.*, 711 F. App'x 130, 137 (4th Cir. 2017) (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015)).

pervasive sequence of intervening events indicating disdain for or intermeddling with the protected activity.") (citations omitted); *Laurent-Workman*, 54 F.4th 201, 218-19 (4th Cir. 2022) ("The required causal link can be established by showing that the adverse act bears sufficient temporal proximity to the protected activity, or by showing the existence of facts that suggest that the adverse action occurred because of the protected activity, or a combination of the two.") (cleaned up).

Plaintiff plausibly states a retaliation claim under Section 1981. Plaintiff alleges facts that she engaged in a protected activity and suffered a materially adverse employment action. To be sure, Plaintiff alleges that she (1) recorded a video of her Caucasian coworkers making racially disparaging remarks regarding Wilson, (2) provided the video to management, (3) complained to management regarding the video, and (4) testified and provided evidence against Defendants in Wilson's subsequent legal action. ECF No. 1-1 ¶¶ 6, 9-10, 17. These allegations constitute protected activities. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (holding that "participating in an ongoing investigation or proceeding under Title VII … opposing discriminatory practices in the workplace … utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions to bring attention to an employer's discriminatory activities[,]" are protected activities). As to materially adverse action, Plaintiff alleges that she was terminated on April 4, 2024. ECF No. 1-1 ¶ 17; *see also Holland*, 487 F.3d at 219.

For the third element, the causal link between Plaintiff engaging in the protected activity and the adverse action, Plaintiff alleges that her termination was directly tied to her engaging in the protected activities discussed above. ECF No. 1-1 ¶ 17. Plaintiff also alleges that in March 2024, roughly one month before her termination on April 4, 2024, Douglas stated to Plaintiff,

"[y]ou should've never made that video it made all of us look bad." ECF No. 1-1 ¶ 37. Plaintiff argues, and Defendant does not address, that Douglas' statement is sufficient to plausibly allege a retaliatory animus despite the two-year time-gap between Plaintiff recording the video and her termination. ECF Nos. 11 at 6; 8-1; 12. Moreover, temporal proximity is not necessary to plausibly allege a causal link. *See Alberti*, 65 F.4th at 156 ("To establish a nexus, a plaintiff can either show a temporal proximity between the protected activity and adverse action, or that other relevant evidence indicates "continuing retaliatory conduct and animus" toward the plaintiff.") (quoting *Lettieri*, 478 F.3d at 650). Plaintiff has alleged ongoing animus and hostility from the time of her protected activity to her termination. The undersigned finds that Douglas' statement, made just one month before Douglas terminated Plaintiff's employment supports a close temporal proximity and that Plaintiff has plausibly alleged continuing retaliatory conduct and animus toward Plaintiff.

Based on the foregoing, the undersigned recommends that the district court deny Defendant's Motion to Dismiss as to Plaintiff's retaliation claim.

**Hostile Work Environment Claims Under Section 1981**

### *Liberal Construction*

Plaintiff does not expressly list as a separate cause of action a hostile work environment claim under § 1981. *See* ECF No. 1-1 at 15. However, throughout her Complaint, Plaintiff alleges that Defendants facilitated a hostile work environment. *See id.* As a result, the Court liberally construes Plaintiff's Complaint as asserting a claim for both a racially and retaliatorily hostile work environment under Section 1981. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Jones*

*v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 373 (2004) (recognizing that hostile work environment claims may be brought under § 1981).[7]

### Hostile Work Environment Based on Retaliation

In the Complaint, Plaintiff alleges several instances of retaliatory conduct that form the basis for her claim. *See* ECF No. 1-1 ¶¶ 6-8, 11, 19-20, 22-23, 25-26, 30, 37. To prevail on a Section 1981[8] claim that a workplace is hostile based on retaliation, a plaintiff must show "(1) unwelcome conduct; (2) that is based on the plaintiff's [prior protected activity]; (3) which is sufficiently severe or pervasive to alter her conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'" *Barnhill*, 138 F.4th at 140 (quoting *Strothers*, 895 F.3d at 328); *see Pueschel v. Peters*, 577 F.3d 558, 564-65 (4th Cir. 2009) (citing *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 338 (4th Cir. 2003) (en banc)); *see also Price v. Amazon Retail LLC*, No. CV MJM-23-2043, 2024 WL 3555094, at *6 (D. Md. July 24, 2024).

### Unwelcome Conduct

A plaintiff does not face "a high hurdle" in establishing that the conduct to which she was subjected was unwelcome. *Yampierre v. Balt. Police Dep't*, C/A No. ELH-21-1209, 2022 WL

---

[7] Defendants understandably do not specifically argue for dismissal of Plaintiff's § 1981 hostile work environment claims in their Motion to Dismiss. ECF No. 8-1. However, given that the Court is liberally construing the Complaint, the Court in turn construes Defendants' Motion to Dismiss to argue for dismissal of all the theories or bases for Plaintiff's § 1981claims, including hostile work environment claims. Accordingly, although Defendant does not specifically argue for dismissal of the hostile work environment claims, the undersigned evaluated such claims under the 12(b)(6) standard of review.

[8] The United States Court of Appeals for the Fourth Circuit has explained that the elements for a hostile work environment are the same for both Title VII and § 1981 claims. *Boyer-Liberto*, 786 F.3d at 277 ("The same test applies to a hostile work environment claim asserted under 42 U.S.C. § 1981."); *see Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001).

16

3577268, at *29 (D. Md. Aug. 18, 2022) (quoting *Strothers*, 895 F.3d at 328). "The Fourth Circuit has explained that 'an employee can demonstrate that certain conduct is unwelcome simply by voicing her objection to the alleged harasser or to the employer.'" *Id.* (quoting *Strothers*, 895 F.3d at 328-29). A court may also infer that the conduct was unwelcome based on "the nature of the conduct." *Id.* (quoting *Strothers*, 895 F.3d at 329).

Plaintiff generally alleges that she voiced her objections to the alleged retaliatory conduct to ADUSA management and Douglas. *See* ECF No. 1-1 ¶¶ 7, 22, 26. Furthermore, based on the nature of the alleged retaliatory conduct itself, the Court infers that such conduct, including physical assault, was unwelcome. *See Strothers*, 895 F.3d at 329. Therefore, Plaintiff has plausibly alleged that the conduct to which she was subjected was unwelcome.

### *Based on Engaging in Protected Conduct*

Plaintiff has plausibly alleged that the unwelcome conduct was based on her recording the video and participating in Wilson's case. For example, Plaintiff alleges that Yohanah learned that she was a subject in the video and thus repeatedly made physical threats toward Plaintiff and even physically assaulted her following the disclosure that Plaintiff recorded the video. ECF No. 1-1 ¶¶ 25, 30. At this stage, these facts are sufficient to plausibly allege that Yohanah made physical threats and physically assaulted Plaintiff because Plaintiff engaged in protected activities. *See Alberti*, 65 F.4th at 156. Plaintiff also alleges that Douglas, who stated to Plaintiff in March 2024 that, "[y]ou never should've made that video," revoked Plaintiff's longstanding work schedule accommodation and directed dispatchers to exclude Plaintiff from critical route assignments. ECF No. 1-1 ¶¶ 11, 37. At this stage, these facts are also sufficient to plausibly allege that Douglas revoked Plaintiff's accommodations and directed dispatchers to exclude Plaintiff from critical route assignments because Plaintiff engaged in protected activities. *See Alberti*, 65 F.4th at 156.

17

Moreover, Defendants allegedly disclosed to Plaintiff's coworkers, including the subjects of the video, that Plaintiff was the individual who had recorded it less than a month after Plaintiff provided the video to management and Douglas.  ECF No. 1-1 ¶ 6, 37. Plaintiff alleges that such disclosure is the cause of much of the conduct that comprises her hostile work environment claim based on retaliation.  *See generally id.* ¶¶ 6-8, 11, 19-20, 22-23, 25-26, 30, 37.  At this stage, the temporal proximity between such disclosure and Plaintiff engaging in protected activities is sufficient to plausibly allege that Defendants disclosed Plaintiff's identity because she provided the video and supported Wilson's complaints.  *See Barnhill*, 138 F.4th at 132 ("While there is not a bright-line rule instructing when temporal proximity is sufficient to establish causation, without other evidence of causation, the gap between the protected activity and the adverse employment action can generally be no longer than two months.") (citing *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021).

Accordingly, the undersigned finds that Plaintiff has plausibly alleged that the unwanted conduct was based on Plaintiff recording the video and supporting Wilson's actions.

### *Severe and Pervasive Conduct to Alter Conditions of Employment*

To satisfy the third element of the claim, a plaintiff must show that they were placed in a "retaliatory hostile work environment ... so severe or pervasive that it would dissuade a reasonable worker from making or supporting a charge of discrimination."  *Barnhill*, 138 F.4th at 140 (quoting *Laurent-Workman*, 54 F.4th at 217).  This high burden cannot be satisfied by claims based on "petty slights or minor annoyances."  *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

"In *Laurent-Workman*, the court held that the plaintiff had adequately pled the third element of her hostile work environment claim by alleging that one of her supervisors became even more

hostile towards her after she complained to her supervisors about a coworker's blatantly racist comments." *Barnhill*, 138 F.4th at 140 (citing *Laurent-Workman*, 54 F.4th at 207-09, 218). "The supervisor's acts of hostility involved 'a series of unpredictable management decisions and acts of sabotage.'" *Id.* (citing *Laurent-Workman*, 54 F.4th at 218). "They 'ranged from erroneous reprimands to bogus denials of professional training opportunities to the alteration of work product in a manner damaging to Laurent-Workman's reputation, on top of additional meddling.'" *Id.* (citing *Laurent-Workman*, 54 F.4th at 218). "The court held that any one of these actions may not have been enough to satisfy the third element of the claim 'when considered in isolation,' but together, 'the allegations t[old] a multi-act story of undermining, gaslighting, and disruption[,]' which satisfied the element. *Id.* (citing *Laurent-Workman*, 54 F.4th at 218). "[T]he presence of 'physical threats undeniably strengthens a hostile work environment claim.'" *E.E.O.C. v. Sunbelt Rentals*, 521 F.3d at 318 (4th Cir. 2008) (quoting *White v. BFI Waste Servs.*, 375 F.3d 288, 298 (4th Cir. 2004))

Plaintiff has plausibly alleged that she was placed in a retaliatory hostile work environment so severe or pervasive that it would dissuade a reasonable worker from making or supporting a charge of discrimination. Plaintiff alleges that her longstanding scheduling accommodation was revoked, Douglas directed dispatchers to exclude her from critical route assignments, she was physically threatened and subjected to physical assault, she was verbally ridiculed, and her employment was ultimately terminated. ECF No. 1-1 ¶¶ 11, 17, 25, 30, 32, 37.

Taken together, the undersigned finds that Plaintiff's allegations plausibly allege severe and pervasive conduct that altered the conditions of her employment.

### *Imputable to the Employer*

Whether a hostile work environment is imputable to an employer depends on the status of the harasser.  *See Boyer-Liberto*, 786 F.3d at 278; *see also Strothers*, 895 F.3d at 332-33.  If the harassing employee is the victim's coworker, then the employer is liable only if it was "negligent in controlling working conditions."  *Boyer-Liberto*, 786 F.3d at 278 (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013)); *see Chapman v. Oakland Living Ctr., Inc.*, 48 F.4th 222, 232 (4th Cir. 2022) ("[A]n employer is liable for a third party 'creating a hostile work environment if the employer knew or should have known of the harassment and failed to take prompt remedial action reasonably calculated to end the harassment.'") (quoting *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 423 (4th Cir. 2014)); *Ocheltree*, 335 F.3d at 333–34 (4th Cir. 2003) ("[T]he employer may be liable in negligence if it knew or should have known about the harassment and failed to take effective action to stop it.").  On the other hand, if the harasser is the victim's supervisor, the employer is strictly liable for the supervisor's harassing behavior if it "culminates in a tangible employment action," subject to an affirmative defense that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided.  *Boyer-Liberto*, 786 F.3d at 278 (quoting *Vance*, 570 U.S. at 424).

Plaintiff has plausibly alleged that the hostile work environment is imputable to ADUSA. Plaintiff alleges retaliatory harassment perpetrated by both coworkers, including Yohanah, Florian, and other dispatchers, as well as her supervisor, Douglas.  ECF No. 1-1 ¶ 7, 8, 23, 25, 30, 37.  As to her coworkers, Plaintiff alleges that she reported the retaliatory harassment to Defendants and that Defendants failed to take prompt remedial action.  *See*, *e.g.*, ECF No. 1-1 ¶¶ 22 ("During her employment, Plaintiff … repeatedly raised concerns to Defendant Douglas … about

discriminatory practices and a hostile work environment."), 7-8 (alleging that management consistently dismissed Plaintiff's reports of harassment and retaliation). Furthermore, as to retaliatory harassment perpetrated by Douglas, Plaintiff alleges that Douglas' harassing behavior culminated in tangible employment actions, including her ultimate termination. *See Boyer-Liberto*, 786 F.3d at 278. Accordingly, the undersigned finds that Plaintiff has plausibly alleged that the retaliatory harassment comprising Plaintiff's hostile work environment claim is imputable to ADUSA.

Based on the foregoing, the undersigned finds that Plaintiff has plausibly alleged a hostile work environment claim based on retaliation under § 1981 against Defendants. Therefore, the undersigned recommends that the district court deny Defendants' Motion to Dismiss as to such claim.

### Hostile Work Environment Claim Based on Race Discrimination

A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto*, 786 F.3d 276-77 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (internal quotation marks omitted). Thus, to prevail on a § 1981[9] claim that a workplace is racially hostile, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's ... race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Id.* at

---

[9] The Fourth Circuit has explained that this standard applies to both Title VII and § 1981 claims. *Boyer-Liberto*, 786 F.3d at 277 ("The same test applies to a hostile work environment claim asserted under 42 U.S.C. § 1981."); *see Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001).

277 (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011)) (alteration and internal quotation marks omitted).

As discussed above, Plaintiff's allegations do not demonstrate that the hostile conduct was based upon her race. At most there is a mere conclusion to this effect. The factual allegations focus on hostile conduct based upon her protected activity. Plaintiff does not plausibly allege that Defendants' conduct is based on her race but rather alleges that Defendants retaliated against her for engaging in protected activities. Accordingly, the undersigned recommends that the district court dismiss, without prejudice, Plaintiff's hostile work environment claim to the extent it is based on race discrimination.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the district court **GRANT in part AND DENY in part** Defendants' Motion to Dismiss. ECF No. 8. The undersigned recommends that the district court **GRANT** Defendants' Motion to Dismiss, without prejudice, as to Plaintiff's race discrimination and racially hostile work environment claims and **DENY** Defendants' Motion to Dismiss as to Plaintiff's retaliation and retaliatorily hostile work environment claims.

IT IS SO RECOMMENDED.

s/William S. Brown
United States Magistrate Judge

December 15, 2025
Greenville, South Carolina

*The attention of the parties is directed to the important notice on the following page.*

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).